BREITENBACH, Executrix, Appellant, vs. SCHOEN, Respondent.

*April 8—May 6, 1924.*

*Joint tenancy: Tenancy in common: Assignment of stock certificates: Gifts: Necessity of delivery: Evidence: Sufficiency.*

1. Joint tenancies are no longer favored in the law, as changes in the law of tenures have to a considerable extent abolished the reasons for their existence, and courts of law now incline against them. p. 591.

2. Where deceased, who owned certificates of stock, assigned them to herself and her son, there existed neither of the characteristic unities of title or of time, and under such circumstances a tenancy in common was created rather than a joint tenancy; and there was no right of survivorship as to the certificates. p. 592.

3. As to certificates of stock which deceased delivered to her son-in-law to be kept in a strong box, she retaining one key and giving him the other, the evidence is *held* to show that, while deceased intended that after her death the certificates should become the property of the defendant, her son, she never delivered the stock to him and hence did not execute a gift. *Dupont v. Jonet,* 165 Wis. 554, distinguished. p. 594.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Reversed.*

The facts are not in dispute and are as follows: Anna Maria Schoen, widow, hereinafter referred to as the deceased, had been a resident of the city of Milwaukee for about sixty-five years and died at the age of seventy-nine years. She was German and unable to read or write English. Her husband had died in December, 1919. The defendant, her son, had lived in the home of the deceased during his entire life up to the time of her death. The deceased had two children besides the defendant, the plaintiff *Mary Breitenbach* and Barbara Reno, who ever since her marriage in 1905 lived upon the same premises but in a separate house from that of the defendant. The deceased had for some years prior to her death invested money in

the capital stock of the Mutual Building and Savings Association, and in 1919 owned certificates of such stock in the aggregate amount of $3,600. At that time and for some time prior thereto the certificates had been in the possession of Joseph Reno, husband of the daughter Barbara Reno, and were kept by him in a strong box in his home. Reno testified: "She told me to keep them there until further notice, and if she called for them why I should know where to find them; she had a key as well as I did."

On January 26, 1920, four certificates were taken from the box by Reno to the Building and Savings Association office, and there the following assignment was indorsed upon the back of each certificate:

"For value received, I hereby sell, transfer, and assign to Anna Maria Schoen or *Peter Schoen*, her son, or survivor, the shares of stock within mentioned, and hereby authorize the officers to make the necessary transfer on the books of the corporation.

"Witness my hand and seal this 26th day of January, 1920."

The deceased signed the assignment on the back of each certificate and delivered the certificates to the witness Reno for safekeeping. Reno thereupon took the certificates and placed them in the strong box in his home, from which they were never removed until after the death of the deceased. Subsequently, five other certificates were purchased with money belonging to the deceased, were issued to "Anna Mary Schoen or *Peter Schoen*, her son, or survivor," and were likewise taken by Reno and placed in the strong box for safekeeping, and were in the box at the time of the death of the deceased. The box was at all times kept in the home of Reno. He had one key and the deceased another, which she kept in a bureau drawer in her bedroom, where it was found after her death. A few days before the death of the deceased the defendant removed from the box a $200 certificate for the purpose of obtaining money

with which to pay expenses of the deceased's last illness. Shortly after the death of the deceased's husband the defendant went to the box for the purpose of obtaining a certificate in order to procure money with which to buy a tombstone to be placed upon the grave of the husband and father. After the death of the deceased the defendant was placed in possession of the certificates by the brother-in-law, Reno, and claims to be the owner thereof.

The court found that a joint tenancy had been created in Exhibits 1, 2, 3, and 4 by the execution of the assignment clauses hereinbefore referred to; that there had been a delivery and a completed gift of all of the certificates by the deceased prior to her death; and that the defendant was, as survivor, the owner of Exhibits 1 to 4 inclusive and of Exhibits 5 to 9 inclusive. The ownership of the defendant, however, was found to be conditional upon the discharge of certain obligations, consideration of which is not material here.

From the judgment rendered accordingly the plaintiff appeals.

For the appellant the cause was submitted on the brief of *George A. Affeldt* of Milwaukee.

*O. L. O'Boyle* of Milwaukee, for the respondent.

RosenbeRRY, J. It is conceded that a joint tenancy may be created in personal property. It is contended that there must be the characteristic unities, namely: unity of time, title, interest, and possession. *Dupont v. Jonet,* 165 Wis. 554, 162 N. W. 664.

It is claimed that under the undisputed facts in this case the deceased could not, by assigning the certificates to herself, create a joint tenancy because her interest and the interest of the defendant were not created by the same act, nor did the interest of the deceased and that of the defendant vest at one and the same time. Joint tenancies are no longer favored in the law as they once were. Changes in

the law of tenures have to a considerable extent abolished the reasons for the existence of joint tenancies. Courts of law now incline against them. *Martin v. Smith,* 5 Binn. (Pa.) 16; 33 Corp. Jur. p. 905, § 6, and cases cited.

Manifestly, the deceased could not convey an interest in the certificates to herself, and it is quite clear that she did not intend to convey the entire interest in the certificates to her son. Not being able to make a conveyance to herself, there was neither unity of title nor unity of time, and under such circumstances a tenancy in common was created rather than a joint tenancy. There was therefore no right of survivorship as to the four certificates assigned. *Wright v. Knapp,* 183 Mich. 656, 150 N. W. 315; *Pegg v. Pegg,* 165 Mich. 228, 130 N. W. 617, 33 L. R. A. N. s. 166, and cases cited.

The second and more difficult question is as to whether or not there was such a delivery of the certificates assigned and issued directly to the deceased and the defendant as was necessary to complete the gift. There is no dispute but that the entire property belonged to the deceased. It is quite clear, also, that the deceased intended that the defendant should have the property after her death. This is indicated not only by the assignment of the certificates hereinbefore referred to and by the fact that she caused certain certificates to be issued jointly to her and the defendant, but she also executed a paper or informal writing as follows:

"Milwaukee, Wisconsin, June 30, 1921.
"All the money that Mr. Crowley has got belongs to *Peter Schoen,* her son, but he must take $100 to church for masses.                    A. M. SCHOEN."

The question is not as to what was the intention of the deceased, but whether or not there was such a delivery as was necessary to complete the gift. The facts are undisputed. The trial court found that there was a sufficient delivery. As is set forth in the statement of facts, the certificates were given by the deceased to her son-in-law, Reno,

Breitenbach v. Schoen, 183 Wis. 589.

and by him placed in a strong box in his home, to which there were two keys—one in the possession of Reno and the other in the possession of the deceased. The son testified that shortly after his father's death he went to the box alone and got out the certificate at the time the tombstone was purchased. A second time he went on his own initiative to the box and took one of the $300 certificates. That was a couple of days before his mother died and she knew that he was doing it. During all of this time the mother kept her key to the box in a dresser drawer in her bedroom. He was asked: "Could you take the key whenever you wanted to?" Answer: "Yes, sir." He further testified:

"The key was where I could get it any time I wanted it, and I did take it on occasions. I did not go over and open the box on any other times than the two mentioned."

Under the authority of *Dupont v. Jonet*, 165 Wis. 554, 162 N. W. 664, it is claimed that these facts constitute a sufficient delivery. There a husband and wife went to a bank together, where he surrendered certificates of deposit which were in his name and had new certificates made out in his name and her name jointly, payable to either, then removed such certificates, took them home, and kept them until his death in a box accessible to both or either at any time. The two cases are clearly distinguishable. There, there was a joint possession. Here, there was no joint possession. While the son had access to the key in the sense that he could go to his mother's bedroom and by opening a bureau drawer take possession of it, this he did with her knowledge and consent and not by virtue of any right vested in him. While the evidence in the *Dupont Case* was very meager, it appears that the right of the husband and wife as to the possession and custody of the papers there referred to was in all respects equal. The right of one was not in subordination to that of the other. The deceased did not deliver these certificates to her son, but delivered them to her son-in-law, with the injunction that they were to be kept safely for her. We must determine the legal significance of her conduct

from what she did, not from what the son did. She never invested the son with any right to the possession of her key. When he took the key he took it from her. It is quite clear that the mother intended that after her death the certificates should become the property of *Peter* as indicated by the writing, but it is equally clear that she did not intend to part with the control and disposition of the property during her lifetime. She could not give away the property and keep it. She was obliged to choose between the two alternatives, and she chose to keep it. The gift not having been executed, the trial court was in error in adjudging the defendant the owner of the certificates in question.

*By the Court.*—Judgment of the circuit court is reversed, and cause remanded with directions to enter judgment for the plaintiff in accordance with this opinion.

ESCHWEILER, J., dissents.