## Estate of Skilling: Skilling, Executor, Appellant, vs. Skilling, Respondent.

*April 3—June 24, 1935.*

*Wendell McHenry* of Waupaca, for the appellant.

For the respondent there was a brief by *Browne & Browne* of Waupaca, and oral argument by *Edward E. Browne.*

The following opinion was filed April 30, 1935:

NELSON, J. Edward Skilling died on January 6, 1934. He left surviving him as his sole heirs at law his widow, Wilhelmine Skilling, a son, John M. Skilling, and two daughters, Mary Monty and Josephine Beach. About a year before his death he executed a will in which he gave, bequeathed, and devised to his widow, son, and daughters, "share and share alike," certain real estate specifically described, and "also all of my personal property consisting of $2,500 deposited in the Old National Bank of Waupaca, Wisconsin, and my household furniture and any other property of whatsoever kind and description. . . ." His will was duly admitted to probate on February 12, 1934. John

Skilling, nominated therein as executor, was duly appointed as such. He filed an inventory in which the real estate, household furniture, and certain moneys deposited in Farmers State Bank were listed, but in which he did not list the sum of $1,036.25, which, at the time of the death of Edward Skilling, was in the Old National Bank of Waupaca in a savings account under the names of "Edward Skilling or John M. Skilling." The widow petitioned the court as hereinbefore stated with the result mentioned.

There can be no doubt that on December 4, 1930, if not before, Edward Skilling and the bank created a joint savings account payable to Edward Skilling or John M. Skilling. The passbook issued by the bank reveals that the account was not only in the names of "Edward Skilling or John M. Skilling," but that the following notation was stamped upon one of the pages directly under the name of John M. Skilling.

"The money herein deposited is owned jointly by the persons named and is subject to the order of either, the balance at the death of either to belong to the survivor."

The bank's records likewise show that the savings account was in the names of Edward Skilling or John M. Skilling, and also have stamped upon them the notation above quoted. Alfred Johnson, the president of the bank, and Olive Stratton, who had charge of the savings department, testified that the account was a joint account; that, at the time Edward Skilling made the deposit evidenced by the passbook mentioned, he requested that the account be made a joint account, and that the rubber stamp notation mentioned was used only in case a joint account was intended to be created. There was no evidence that the passbook had ever been delivered by Edward Skilling to John, or that the passbook had ever been in the possession of the latter, except that on two different occasions when Edward considered himself very ill he had turned the passbook over to one of his daughters with

instructions to deliver it to John, with the understanding that, if he recovered, the book should be returned to him. Each time Edward did recover and the passbook was returned to him by John. For some time prior to his death the passbook was left at the bank.

The county court reached the very pardonable conclusion that the controversy was ruled by the law applicable to gifts *inter vivos,* and that, since the evidence did not show that Edward had ever made a delivery of the passbook to John except *causa mortis,* when he considered himself very ill, and that since the passbook was never jointly possessed by them after its issue, John's ownership of the account as survivor could not be sustained. *Tobin v. Tobin,* 139 Wis. 494, 121 N. W. 144; *Dupont v. Jonet,* 165 Wis. 554, 162 N. W. 664; *Breitenbach v. Schoen,* 183 Wis. 589, 198 N. W. 622; *Marshall & Ilsley Bank v. Voigt,* 214 Wis. 27, 252 N. W. 355.

It so happens that for a number of months this court has had under consideration a similar controversy involving certificates of deposit issued in the names of "Joseph Staver or Frank J. Staver," which certificates remained in the possession of Joseph Staver until his death, and which certificates were specifically bequeathed to Frank J. Staver by the will of Joseph Staver. After carefully reconsidering our former decisions, it has been held that Frank J. Staver took title to the certificates by right of survivorship as a joint payee rather than under the will, notwithstanding the fact that no delivery of the certificates was shown, or that no joint possession existed. *Estate of Staver, ante,* p. 114, 260 N. W. 655. In that case the prior decisions of this court are reviewed. *Breitenbach v. Schoen, supra,* is overruled. The rule stated in *Marshall & Ilsley Bank v. Voigt, supra,* is modified, although the result reached in that case is deemed to have been correct. There is no need to repeat here what was so fully and explicitly stated in the *Staver*

578

*Case.* That case, which involved certificates of deposit, is in all respects analogous to this case which involves a pass-book evidencing a joint savings account. The law of that case rules this.

*By the Court.*—Judgment and order reversed.

A motion for a rehearing was denied, with $25 costs, on June 24, 1935.