SIMON and others, Appellants, vs. CHARTIER and others, Respondents.

*May 13—June 10, 1947.*

*Val. W. Dittmann* of Kenosha, for the appellants.

For the respondent Leland N. Chartier there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil.*

For the respondent Lutheran Brotherhood there was a brief by *Benson, Butchart, Haley & Benson* of Racine, and oral argument by *Emery B. Benson.*

FOWLER, J. Nearly all of the facts material to this case are stated in the opinion of *Chartier v. Simon, ante,* p. 639, 27 N. W. (2d) 751, decided herewith, and the statement of facts there made is here referred to and made a part hereof. Additional facts so far as material to the issues here involved will be herein stated. The unlawful-detainer action of *Chartier v. Simon, supra,* was commenced in justice court September 7, 1945. The instant action was begun by service of summons on April 2, 1946. In this action the plaintiff, Irene H. Simon, widow of Lawrence E. Simon, and a son and daughter of Lawrence and Irene, seek to set aside the land contract and mortgage mentioned in the opinion in *Chartier v. Simon* on the grounds that the signature of Irene Simon to those instruments was procured by fraud and duress exercised upon her, and that Lawrence E. Simon was mentally incompetent when he signed said instruments. The trial judge found upon the evidence adduced on the trial, (1) that Irene and Lawrence Simon were "the owners as joint tenants" of the property involved; (2) that Lawrence E. and Irene Simon on July 23, 1945, as vendors and Leland N. Chartier and his wife, Marguerite, as vendees, executed a land contract "for the sale" by the vendors to the vendees of the property for $4,800; (3) that on said July 23d, the Simons and Chartiers executed their note secured by a mortgage on the premises, payable to the Lutheran Brotherhood, for the sum of $3,700, and that Irene Simon was not under duress when the note and mortgage were executed and the executions thereof were her "voluntary act

and deed;" (4) that Lawrence E. Simon died August 8, 1945; (5) that the execution of the land contract was not done by Irene Simon under mental duress of her husband, and that the Chartiers had "no information and no notice of any desire on . . . [her] part . . . not to enter into said contract." As conclusions of law the trial judge determined that the defendants were entitled to judgment of dismissal on the merits and to costs and to attorney fees to be determined by the court.

We shall not detail the evidence bearing on the question of duress. The findings of fact are supported by the evidence. The only claim that duress was exercised upon Irene was that it was exercised by her husband, who was a veteran of World War I and under pension of the United States government as under mental disability and was under the guardianship of Irene under order of the county court of Kenosha county. Lawrence kept a "Luger" gun in his possession constantly loaded and the duress claimed was through fear that he would use the gun upon himself or Irene unless his wishes were complied with by Irene, and he had been the instigator and negotiator in the sale of the property and in securing a loan thereon. He committed suicide by using the gun upon himself after the execution of the land contract and mortgage.. The avails of the $3,700 loan, after payment of a mortgage on the property on which $200 was due and some expenses by the Brotherhood incident to examination of the property and the title thereto had been paid by check payable and delivered to Lawrence E. Simon. This check for some reason not disclosed, but presumably to enable the real-estate agent with whom the property had been listed to collect his commission on the sale of the property, had been indorsed by Lawrence to the agent and cashed by the agent. The agent had executed a check for $227 less to Lawrence E. Simon and told him not to cash it until told to. The agent had given a "stop payment" order to the bank on which the check was issued which was not released until the day after Lawrence committed suicide and which was

returned after his death. Lawrence left a suicide note in which he told his wife to keep and enjoy their home. After the death of Lawrence the widow offered the Chartiers and the Brotherhood to restore the *status quo* and requested them to rescind the contract and the mortgage but they refused. They were within their legal rights in so refusing.

On the other phase of the case, the mental incompetency of Lawrence Simon, the trial judge made no finding. This became immaterial by the death of Lawrence because his interest in joint tenancy passed to his wife on his death. The signing of the land contract did not constitute a severance of the joint estate. *Kurowski v. Retail Hardware Mut. F. Ins. Co.* 203 Wis. 644, 647, 648, 234 N. W. 900. The legal title was in the Simons jointly at the husband's death and passed by survivorship to his widow. The wife, by the trial judge's finding, signed the instruments of her own free will, uncoerced by her husband. She is bound by the land contract to execute a warranty deed on payment of the amount of her equity and her deed will pass her after-acquired title. If the instruments were subject to be set aside in the interest of the husband while he lived, by reason of mental incompetency on his part, his right of action did not survive to his personal representative because his title did not pass by his death to his heirs but to his widow, and she cannot exercise his right because of her joining in the execution of the instruments.

It is regrettable that this decision cannot determine the precise rights of the parties in accounting or direct surrender of possession of the premises, but the defendants have not by counterclaim asked for relief and these matters must be adjusted by the parties or adjudged in future litigation. While the judgment below will be affirmed no costs will be awarded to the defendants. The plaintiffs will pay the clerk's fees.

*By the Court.*—The judgment of the municipal court is affirmed without costs, except the clerk's fees, to be paid by the appellants.